UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

ARAELLA BOYUM,                                   :
                                                 :
                        Plaintiff,               :
                                                 :
            -against-                            :  Civil Action No. 05 Civ. 4801 (TPG)(FM)
                                                 :
HORIZON CONDOMINIUM, EXCEL                       :
MANAGEMENT SERVICES, INC., STEVEN                :
LEVINE, NATHAN FARBER, and HOWARD                :
OERTELL,                                         :
                                                 :
                        Defendants.              :

-----------------------------------------------------------x


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY OR, ALTERNATIVELY, TO COMPEL ARBITRATION


CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants
420 Lexington Avenue, Suite 420
New York, New York 10170
(212) 687-7410


Counsel:
Robert A. Sparer (RS-1355)
Kristine A. Sova (KS-5198)

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................................... 1

PROCEDURAL HISTORY ............................................................................................................. 1

STATEMENT OF FACTS .............................................................................................................. 2

ARGUMENT................................................................................................................................... 4

I.      STANDARD GOVERNING 12(b) MOTION TO DISMISS ............................................. 4

II.     THOSE PORTIONS OF PLAINTIFF'S INTENTIONAL INFLICTION
        OF EMOTIONAL DISTRESS CLAIM ACCRUING PRIOR TO MAY 6,
        2004 ARE TIME-BARRED AND SHOULD BE DISMISSED .......................................... 5

III.    PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL
        DISTRESS CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF
        FAILS TO STATE A CLAIM ............................................................................................ 6

IV.     PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL
        DISTRESS CLAIM SHOULD BE DISMISSED AS DUPLICATIVE OF
        PLAINTIFF'S OTHER TORT CLAIMS ........................................................................... 8

V.      PLAINTIFF'S DEFAMATION CLAIM MUST BE DISMISSED FOR
        FAILURE TO COMPLY WITH THE SPECIAL PLEADING
        REQUIREMENTS SET FORTH IN SECTION 3016(a) OF THE NEW
        YORK CIVIL PRACTICE LAW AND RULES AND ON THE BASIS
        OF PRIVILEGE ................................................................................................................. 9

VI.     PLAINTIFF'S STATE TORT LAW CLAIMS SHOULD BE
        DISMISSED BECAUSE THEY ARE PREEMPTED BY SECTION 301
        OF THE LABOR MANAGEMENT RELATIONS ACT AND
        PLAINTIFF HAS NOT EXHAUSTED THE GRIEVANCE AND
        ARBITRATION PROCEDURES IN THE COLLECTIVE
        BARGAINING AGREEMENT .......................................................................................... 13

        A.      PLAINTIFF'S STATE TORT LAW CLAIMS ARE PREEMPTED BY
                SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT ................................ 13

                1.      Intentional Infliction of Emotional Distress Claim .................................... 14

                2.      Defamation Claim ....................................................................................... 16

           3.     Tortious Interference with Contractual Relations and
                 Tortious Interference with Prospective Economic
                 Advantage/Relations Claims ..................................................................... 18

    B.    PLAINTIFF HAS NOT EXHAUSTED THE GRIEVANCE AND
         ARBITRATION PROCEDURES IN THE COLLECTIVE BARGAINING
         AGREEMENT ............................................................................................. 20

VII.  ALTERNATIVELY, IF THIS COURT DECIDES THAT PLAINTIFF'S
      STATE TORT LAW CLAIMS SHOULD NOT BE DISMISSED, THIS
      COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE THESE
      CLAIMS PURSUANT TO THE ARBITRATION PROVISION IN THE
      COLLECTIVE BARGAINING AGREEMENT ............................................... 22

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F.Supp.2d 485
(S.D.N.Y. 1998)............................................................................................20

*Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union
580*, 875 F.Supp. 245 (S.D.N.Y. 1995) ...........................................................23

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 85 L.Ed.2d 206, 105 S.Ct. 1904
(1985).....................................................................................................13, 21

*Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F.Supp. 162 (E.D.N.Y.
1990)............................................................................................................15

*AT&T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 89
L.Ed.2d 648, 106 S.Ct. 1415 (1986)................................................................24

*Baylis v. Marriott Corp.*, 906 F.2d 874 (2d Cir. 1990) ...............................................18

*Caci v. Laborers International Union of N. Am.*, 1999 U.S. Dist. LEXIS 21573
(W.D.N.Y. 1999), *dismissed*, 2000 U.S. Dist. LEXIS 4876 (W.D.N.Y.
2000)................................................................................................14, 16, 18

*Capitano v. Laborers Int'l Union of N. Am.*, 2000 U.S. Dist. LEXIS 4875,
(W.D.N.Y. 2000) ..........................................................................................18

*CBS, Inc. v. Snyder*, 798 F.Supp. 1019 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d
Cir.1993).......................................................................................................23

*Cespuglio v. Ward*, 2004 U.S. Dist. LEXIS 8586 (S.D.N.Y. 2004)..............................18

*Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F.Supp.2d 208 (S.D.N.Y.
2003), *aff'd*, 2004 U.S. App. LEXIS 8986 (2d Cir. 2004) .................................7

*Dec v. Auburn Enlarged Sch. Dist.*, 249 A.D.2d. 907, 672 N.Y.S.2d 591 (4th
Dept. 1998) .....................................................................................................9

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060 (2d Cir. 1993) ...........22

*Demas v. Levitsky*, 291 A.D.2d 653, 738 N.Y.S.2d 402 (3d Dept. 2002) ......................9

*Dragone v. M.J. Raynes, Inc.*, 695 F.Supp. 720 (S.D.N.Y. 1988) ...........................14, 19

*Erdberg v. Freeman*, 90 Misc.2d 797, 396 N.Y.S.2d 315 (N.Y. Civ. Ct. 1977)............12

*Erlitz v. Segal, Liling & Erlitz*, 142 A.D.2d 710, 530 N.Y.S.2d 848 (2d Dept.
1988)............................................................................................................10

*Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978) .........8

*Foster v. Churchill*, 87 N.Y.2d 744, 665 N.E.2d 153, 642 N.Y.S.2d 583 (1996)..........12

*Gay v. Carlson*, 60 F.3d 83 (2d Cir. 1995)................................................................7, 8

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) .................................................23

*Gill v. Pathmark Stores, Inc.*, 237 A.D.2d 563, 655 N.Y.S.2d 623 (2d Dept. 1997) ...................10

*H.J. Inc. v. Northwestern Bell Tel., Co.,* 492 U.S. 229, 106 L.Ed.2d 195, 109 S.Ct.
    2893 (1989)............................................................................................................................4

*Herlihy v. Metropolitan Museum of Art*, 214 A.D.2d 250, 633 N.Y.S.2d 106 (1st
    Dept. 1995) ...........................................................................................................................8

*Hernandez v. New York City Law Dept. Corp. Counsel*, 258 A.D.2d 390, 685
    N.Y.S.2d 674 (1st Dept. 1999), *appeal dismissed*, 93 N.Y.2d 957, 716
    N.E.2d 698, 694 N.Y.S.2d 633 (1999), *cert. denied*, 529 U.S. 1090, 146
    L.Ed.2d 648, 120 S.Ct. 1727 (2000)...................................................................................10

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 47 L.Ed.2d 231, 96 S.Ct. 1048
    (1976)..................................................................................................................................15

*Hishon v. King & Spalding,* 467 U.S. 69, 81 L.Ed.2d 59, 104 S.Ct. 2229 (1984) ..........................4

*Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d
    699 (N.Y. 1993)....................................................................................................................6

*King v. New York Tel. Co., Inc.*, 785 F.2d 31 (2d Cir. 1986) .........................................................22

*Konikoff v. Prudential Ins. Co. of Am.*, 1999 U.S. Dist. LEXIS 13501 (S.D.N.Y.
    1999), *aff'd*, 234 F.3d 92 (2d Cir. 2000) ............................................................................11

*La Duke v. Lyons,* 250 A.D.2d 969, 673 N.Y.S.2d 240 (3d Dept. 1998) .......................................8

*Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992).....................12

*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas
    Flour Co.*, 369 U.S. 95, 7 L.Ed.2d 593, 82 S.Ct. 571 (1962)............................................13

*Lucas v. Novogratz*, 2002 U.S. Dist. LEXIS 24321 (S.D.N.Y. 2002)..............................................5

*Marine Transport Lines, Inc. v. International Organization of Masters, Mates &
    Pilots*, 609 F.Supp. 282 (S.D.N.Y. 1985)...........................................................................21

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 682
    N.Y.S.2d 167 (1st Dept. 1998) .............................................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 87
    L.Ed.2d 444, 105 S.Ct. 3346 (1985)....................................................................................23

*Moore v. City of New York*, 219 F.Supp.2d 335 (E.D.N.Y. 2002) ...................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 74 L.Ed.2d
    765,  103 S.Ct. 927 (1983)...................................................................................................22

*Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461
    N.Y.S.2d 232 (1983)..........................................................................................................6, 7

*Panczykowski v. Laborers Int'l Union of N. Am.*, 2000 U.S. Dist. LEXIS 4847,
    (W.D.N.Y. 2000), *aff'd*, 2001 U.S. App. LEXIS 1282 (2d Cir. 2001) .............................18

*Republic Steel Corp. v. Maddox*, 379 U.S. 650, 13 L.Ed.2d 580, 85 S.Ct. 614 (1965)...................................................................................................................22

*Rich v Coopervision, Inc.,* 198 A.D.2d 860, 604 N.Y.S.2d 429 (4th Dept. 1993) ........................6

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 41 L.Ed.2d 270, 94 S.Ct. 2449 (1974)...................................................................................................................24

*Seaver v. Yellow Freight Sys., Inc.*, 1996 U.S. Dist. LEXIS 15915 (W.D.N.Y. 1996)................................................................................................................14, 15

*Smith v. Evening News Assoc.*, 371 U.S. 195, 9 L.Ed.2d 246, 83 S.Ct. 267 (1962).....................15

*Stallard v. B-Line Sys., Inc.*, 799 F.Supp. 924 (S.D. Ill. 1992) .......................................17

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 4 L.Ed.2d 1409, 80 S.Ct. 1347 (1960)...........................................................................................24

*Sweeney v. Prisoners' Legal Servs. of New York*, 146 A.D.2d 1, 538 N.Y.S.2d 370 (3d Dept. 1989)..................................................................................................9

*Tower Air, Inc. v. Federal Express Corp.,* 956 F.Supp. 270 (E.D.N.Y. 1996) ................................5

*Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ...............................................20

*Varela v. Investors Ins. Holding Corp.*, 185 A.D.2d 309, 586 N.Y.S.2d 272 (2d Dept. 1992), *aff'd*, 81 N.Y.2d 958, 615 N.E.2d 218 (1993)..............................................10

*Well v. Rambam*, 300 A.D.2d 580, 753 N.Y.S.2d 512 (2d Dept. 2002)........................................10

## STATUTES

29 U.S.C. § 185(a).............................................................................................................13

9 U.S.C. § 1, *et seq.* ........................................................................................................22

## OTHER AUTHORITIES

Restatement (Second) of Torts § 596 cmt. d (1977).......................................................12

Restatement (Second) of Torts, § 46 cmt. h (1965)........................................................7

## RULES

N.Y. CPLR § 215(3)..........................................................................................................5

N.Y. CPLR § 3016(a) (2005) ............................................................................................9

Rule 12(b) of the Federal Rules of Civil Procedure .......................................................4

## PRELIMINARY STATEMENT

Plaintiff Araella Boyum ("Plaintiff" or "Boyum") commenced this lawsuit against her employer, Defendants Horizon Condominium ("Horizon"), Complaint, ¶¶ 2, 9,[1] Excel Management Services, Inc. ("Excel"), her employer's managing agent, Complaint, ¶ 3, Steven Levine ("Levine"), the managing agent's principal, Complaint, ¶ 4, Nathan Farber ("Farber"), her supervisor, Complaint, ¶ 11, and Harold Oertell s/h/a Howard Oertell ("Oertell"), a member of the Board of Managers of her employer, Complaint, ¶ 6 (collectively, "Defendants"). Plaintiff, despite well-established principles, seeks to recast her wrongful discharge claim as state common-law claims and thereby avoid the requirement that she arbitrate her claims under her union contract.  Defendants, having removed the case to this Court, now move to dismiss the complaint or to compel arbitration as required by the applicable union contract.

## PROCEDURAL HISTORY

Boyum commenced this action in the Supreme Court of the State of New York, New York County on or about May 6, 2005.  On May 18, 2005, Defendants timely removed the action to this Court based on federal question jurisdiction.  Plaintiff's Verified Complaint ("Complaint") alleges four claims – intentional infliction of emotional distress ("IIED"), defamation, tortious interference with contractual relations, and tortious interference with prospective economic advantage/relations (collectively, "state tort law claims") – which, although artfully pleaded as claims arising under state law, are actually claims arising under Section 301 of the Labor Management Relations Act ("LMRA").

---

[1]    A true and accurate copy of Plaintiff's Complaint is attached to Defendants' Notice of Motion as Exhibit A.  All references to Plaintiff's Complaint are denoted as "Complaint, ¶ ___."

Defendants now move to dismiss Plaintiff's Complaint in its entirety, or in the alternative, to compel Plaintiff to arbitrate her state tort law claims, and submit this memorandum of law in support of their motion.  As set forth herein, this Court should dismiss:

(1)     Those portions of Plaintiff's IIED claim that accrued prior to May 6, 2004 as time-barred by the applicable one-year statute of limitations;

(2)     Plaintiff's IIED claim for failure to state a claim;

(3)     Plaintiff's IIED claim as duplicative of Plaintiff's other state tort law claims;

(4)     Plaintiff's defamation claim for failure to comply with the special pleading requirements set forth in Section 3016(a) of the New York Civil Practice Law and Rules ("CPLR") and on the basis of privilege; and

(5)     Plaintiff's state tort law claims because they are preempted by Section 301 of the LMRA and because Plaintiff failed to exhaust the grievance and arbitration procedures set forth in the applicable collective bargaining agreement ("CBA").

If this Court does not dismiss Plaintiff's Complaint in its entirety, this Court should compel Plaintiff to arbitrate her state tort law claims as required by the applicable CBA.

All documents referred to herein are appended to the Notice of Motion submitted herewith.

## STATEMENT OF FACTS

Plaintiff was employed as a daytime concierge by Defendant Horizon at its building on 415 East 37th Street, New York, New York from 1988 until December 3, 2004, when her employment was terminated.  (*See* Complaint, ¶¶ 2, 9, 36).  During Plaintiff's employment, she was a member of Local 32B-32J, S.E.I.U., AFL-CIO ("Union" or "Local 32B-J").  (Complaint, ¶

10).  Plaintiff's employment at 415 East 37th Street was pursuant to a CBA between the Realty

Advisory Board on Labor Relations, Inc. ("RAB") and Local 32B-J.  (Complaint, ¶ 10; CBA).[2]

The  CBA  regulated,  among  other  things,  members'  wages,  hours,  and  working

conditions, *see* CBA, Art. III, XV, sick days, *see* CBA, Art. XII, and vacation days.  (*See* CBA,

Art. XVII(10)).  The CBA also provided for a broad management rights clause.  (*See* CBA, Art.

IV). The management rights clause in the CBA provides, in pertinent part, that:

> 1.  The Union recognizes management's right to direct and control its policies subject to the obligations of this agreement.

> 2.  Employees will cooperate with management within the obligations of this agreement to facilitate efficient building operation.

> 3.  Any employee who is discharged shall be furnished a written statement of reason(s) for such discharge no later than five (5) working days after the date of discharge.

> If any employee . . . is unjustly discharged, he shall be reinstated without loss of seniority or rank and without salary reduction.  The Joint Industry Grievance Committee or the Arbitrator may determine whether, and to what extended, the employee shall be compensated by the Employer for time lost.

(CBA, Art. IV).

The CBA between RAB and Local 32B-J requires that all disputes be submitted to the

grievance and arbitration procedure set forth in the CBA.  (*See* CBA, Art. V-VI).  Specifically,

the CBA provides as follows:

### ARTICLE VI
### Arbitration

> 1.  A Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement, and such other issues as are expressly required to be arbitrated before him, including such issues as may be initiated by the Trustees of the Funds.

---

[2]  A true and accurate copy of the collective bargaining agreement between RAB and Local 32B-J, effective April 21, 2003 to April 20, 2006, is attached to Defendants' Notice of Motion as Exhibit B.  All references to the collective bargaining agreement are denoted as "CBA, Art. ___."

\* \* \*

3. The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues, and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved. Nothing herein shall be construed to forbid either party from resorting to court for relief from, or to enforce rights under, any award. In any proceeding to confirm an award of the Arbitrator, service may be made by registered or certified mail, within or without the State of New York, as the case may be.

\* \* \*

(CBA, Art. VI).

Plaintiff claims that Defendants – her employer and its representatives – engaged in a variety of tortious conduct during or directly related to her employment at Horizon Condominium. The specifics of Plaintiff's allegations are set forth in her Complaint. Notwithstanding the contract language in the CBA, in lieu of grieving or arbitrating all disputes Plaintiff had regarding her employment, Plaintiff opted to pursue some of her claims in court. Indeed, Plaintiff's Complaint contains no allegations that she either grieved or arbitrated her claims.

## ARGUMENT

## I.

## STANDARD GOVERNING 12(b) MOTION TO DISMISS

A federal district court should grant a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *H.J. Inc. v. Northwestern Bell Tel., Co.,* 492 U.S. 229, 249-50, 106 L.Ed.2d 195, 214, 109 S.Ct. 2893, 2906 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L.Ed.2d 59, 65, 104 S.Ct. 2229, 2232 (1984)). *See Tower Air, Inc.*

*v. Federal Express Corp.,* 956 F.Supp. 270, 276-77 (E.D.N.Y. 1996). "In applying this standard, a district court must 'read the facts alleged in the complaint in a light most favorable' to a plaintiff, and accept these allegations as true." *Tower Air,* 956 F.Supp. at 276-77 (quoting *H.J., Inc.,* 492 U.S. at 249). Applying these standards, this Court should grant Defendants' motion.

## II.

### THOSE PORTIONS OF PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM ACCRUING PRIOR TO MAY 6, 2004 ARE TIME-BARRED AND SHOULD BE DISMISSED

In her Complaint, Plaintiff alleges that the actions of Defendants, as described in paragraphs 1 through 42 of her Complaint, constitute IIED. Most of these allegations, however, are time-barred by the one-year statute of limitations applicable to IIED claims. *See Lucas v. Novogratz,* 2002 U.S. Dist. LEXIS 24321, *16 (S.D.N.Y. 2002) (noting that IIED claim is governed by New York's one-year statute of limitations for intentional torts) (citing N.Y. CPLR § 215(3)). For example, Paragraphs 1 through 8 of Plaintiff's Complaint allege facts relevant to parties and jurisdiction. (Complaint, ¶¶ 1-8). Paragraphs 9 through 24.C. of the Complaint allege background facts regarding Plaintiff's and her husband's employment with Defendant Horizon and allege other various facts relevant to time periods prior to 2004.[3] (Complaint, ¶¶ 9-24.C.). Only Paragraphs 25 through 42 of the Complaint specifically or arguably allege time periods from October 2004 onwards. (Complaint, ¶¶ 25-42).

---

[3] In Paragraph 24.C. of the Complaint, Plaintiff alleges that "[i]n or about January 2005, Levine reprimanded Mr. Boyum for behaving 'unprofessionally' towards delivery personnel." Presumably, Plaintiff means January 2004 or an even earlier date, because in Paragraph 25 of the Complaint, Plaintiff alleges that this action, among others, "culminated in Boyum's wrongful discharge . . ." in December 2004. (*See* Complaint, ¶ 36).

Having filed her Complaint on or around May 6, 2005, those portions of Plaintiff's IIED claim that predate May 6, 2004 are time-barred. Since Paragraphs 25 through 42 are the only paragraphs in Plaintiff's Complaint that specifically or arguably contain allegations from May 6, 2004 onwards, those allegations contained in Paragraphs 9 through 24.C., for which Plaintiff alleges an IIED claim, are time-barred and should be dismissed.

### III.

### PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM

The remaining allegations in Plaintiff's Complaint for which Plaintiff alleges an IIED claim – Paragraphs 25 through 42 – should also be dismissed because Plaintiff's allegations do not measure up to the high standards of sufficiency required to state an IIED claim. Nor would Plaintiff's allegations measure up to the applicable standards if they included those allegations that are time-barred.

The courts are wary of allowing plaintiffs to recharacterize their claims for wrongful or abusive discharge, both of which are not recognized in New York, as claims for intentional infliction of emotional distress. *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (1983)*; Rich v Coopervision, Inc.,* 198 A.D.2d 860, 604 N.Y.S.2d 429, 431 (4th Dept. 1993). In 1993, the New York Court of Appeals noted that under these standards, every claim for intentional infliction of emotional distress that the court reviewed failed because the conduct alleged was not sufficiently outrageous. *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (N.Y. 1993). Moreover, it is for the Court to determine, in the first instance, whether the conduct alleged may

reasonably be regarded as so extreme and outrageous as to permit recovery. Restatement (Second) of Torts, § 46 cmt. h (1965); *Howell*, 81 N.Y.2d at 122.

"Under New York law, a party claiming IIED must prove four elements: 1) conduct that goes beyond 'all possible bounds of decency;' 2) intention to cause distress, or knowledge that defendant's conduct would result in emotional distress; 3) severe emotional distress; and 4) a causal link between the defendant's conduct and plaintiff's distress." *Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995) (citation omitted). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Murphy*, 58 N.Y.2d at 303 (quotations and citation omitted).

Plaintiff makes no allegations in her Complaint that Defendants' conduct exceeded all bounds of decency. Nor is there any basis for concluding that Defendants' alleged behavior went beyond all possible bounds of decency. Rather, the bulk of Plaintiff's Complaint contains allegations related to the day-to-day operations of the Horizon Condominium, including the employment, management, and discipline of its employees. For example, the allegations relate to denial of vacation requests, *see* Complaint, ¶ 23.A., Defendants' success in negotiating setting aside an arbitration award regarding vacation policy, *see* Complaint, ¶¶ 23.A.-23.B., change of work hours, *see* Complaint, ¶¶ 23.C., 24.B., the issuance of discipline, *see* Complaint, ¶¶ 23.F.-23.H., 24.C., 31, termination of employment, *see* Complaint, ¶¶ 24.A., 36, and Defendant Horizon's concern that employees who purchase units in the building might create a conflict of interest, *see* Complaint, ¶¶ 15-22. This conduct comes nowhere near the type of conduct that is encompassed by this tort. Indeed, in *Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F.Supp.2d 208 (S.D.N.Y. 2003), *aff'd*, 2004 U.S. App. LEXIS 8986 (2d Cir. 2004), the court

noted that courts have found deficient workplace-based IIED claims that involved far more

egregious conduct. *Id.* at 227 (citing *La Duke v. Lyons,* 250 A.D.2d 969, 972-73, 673 N.Y.S.2d

240 (3d Dept. 1998) (false accusal of a nurse of euthanizing patients, terminating her and

forwarding those allegations to the District Attorney's office for investigation insufficient to state

IIED claim) and *Herlihy v. Metropolitan Museum of Art*, 214 A.D.2d 250, 262-63, 633 N.Y.S.2d

106 (1st Dept. 1995) (plaintiff subjected to ethnic epithets and sexual harassment cannot state

IIED claim)).

Having failed to plead the elements for an IIED claim, which, as noted by the *Gay* court,

are very strictly applied by New York courts, 60 F.3d at 89, Plaintiff's IIED claim should be

dismissed. *See id.* (affirming district court determination dismissing the plaintiff's IIED claim

where there was no allegation in the plaintiff's complaint, and the court had no basis for

concluding, that the alleged behavior went "beyond all possible bounds of decency."). For this

reason, Plaintiff's IIED claim must be dismissed.


## IV.

### PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED AS DUPLICATIVE OF PLAINTIFF'S OTHER TORT CLAIMS

Under New York law, "intentional infliction of emotional distress is a theory of recovery

that is to be invoked only as a last resort" and such a claim is therefore "[p]recluded where the

offending conduct is embraced by a traditional tort remedy." *McIntyre v. Manhattan Ford,*

*Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270, 682 N.Y.S.2d 167, 169 (1st Dept. 1998) (citing

*Fischer v. Maloney*, 43 N.Y.2d 553, 557-58, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217

(1978); *Sweeney v. Prisoners' Legal Servs. of New York*, 146 A.D.2d 1, 7, 538 N.Y.S.2d 370,

374 (3d Dept. 1989)).  *See Moore v. City of New York*, 219 F.Supp.2d 335, 339 (E.D.N.Y. 2002)

(recognizing that the New York Court of Appeals has strongly cautioned against allowing IIED

claims to be brought where other tort remedies are available and noting that this rule has been

consistently applied by lower state courts and federal courts applying New York law).

Where a plaintiff alleges an IIED claim along with traditional tort claims such as

defamation or tortious interference with contractual relations or prospective economic

advantage/relations, New York courts have dismissed the IIED claim as duplicative of the

traditional tort claims.  *See, e.g., Demas v. Levitsky*, 291 A.D.2d 653, 660, 738 N.Y.S.2d 402,

409 (3d Dept. 2002) (holding that lower court erred when it did not dismiss plaintiff's IIED

claim as duplicative of plaintiff's defamation claim); *Dec v. Auburn Enlarged Sch. Dist.*, 249

A.D.2d. 907, 908, 672 N.Y.S.2d 591, 593 (4th Dept. 1998) (same); *Sweeney*, 146 A.D.2d at 7

(dismissing plaintiff's IIED claim as duplicative of defamation claim).  In the instant case, since

the conduct complained of is encompassed within Plaintiff's defamation, tortious interference

with contractual relations, and tortious interference with prospective economic

advantage/relations claims, Plaintiff's IIED claim should be dismissed.

## V.

### PLAINTIFF'S DEFAMATION CLAIM MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE SPECIAL PLEADING REQUIREMENTS SET FORTH IN SECTION 3016(a) OF THE NEW YORK CIVIL PRACTICE LAW AND RULES AND ON THE BASIS OF PRIVILEGE

Section 3016(a) of the New York Civil Practice Law and Rules provides that "[i]n an

action for libel or slander, the particular words complained of shall be set forth in the complaint .

. . ."  N.Y. CPLR § 3016(a) (2005) (emphasis added).  *See Varela v. Investors Ins. Holding*

*Corp.*, 185 A.D.2d 309, 310, 586 N.Y.S.2d 272, 273 (2d Dept. 1992), *aff'd*, 81 N.Y.2d 958, 615 N.E.2d 218 (1993) ("CPLR 3016(a) requires that the particular words complained of be set forth in the complaint . . ."). "The requirement that the defamatory words must be quoted verbatim is strictly enforced." *Varela*, 185 A.D.2d at 310; *Erlitz v. Segal, Liling & Erlitz*, 142 A.D.2d 710, 712, 530 N.Y.S.2d 848, 850 (2d Dept. 1988). Thus, "a cause of action sounding in defamation which fails to comply with the special pleading requirements contained in CPLR 3016(a) that the complaint set forth 'the particular words complained of', mandates dismissal." *Gill v. Pathmark Stores, Inc.*, 237 A.D.2d 563, 564, 655 N.Y.S.2d 623, 625 (2d Dept. 1997). *See, e.g.*, *Well v. Rambam*, 300 A.D.2d 580, 581, 753 N.Y.S.2d 512, 514 (2d Dept. 2002) (reversing denial of motion to dismiss plaintiff's cause of action for defamation "because the plaintiff failed to set forth the particular defamatory words"); *Hernandez v. New York City Law Dept. Corp. Counsel*, 258 A.D.2d 390, 390, 685 N.Y.S.2d 674, 675 (1st Dept. 1999), *appeal dismissed*, 93 N.Y.2d 957, 716 N.E.2d 698, 694 N.Y.S.2d 633 (1999), *cert. denied*, 529 U.S. 1090, 146 L.Ed.2d 648, 120 S.Ct. 1727 (2000) (affirming grant of motion to dismiss plaintiff's cause of action for defamation where "plaintiff fail[ed] to make the requisite allegation(s) setting forth the particular defamatory words spoken or printed").

In the present case, Plaintiff does not plead her claim for defamation with the requisite particularity. The Complaint alleges, in pertinent part, that "Defendants Horizon, Excel, Levine, and Farber falsely accused Boyum of dishonesty, insubordination, and misconduct." (Complaint, ¶ 46). In so alleging, Plaintiff provides only one example in support of her defamation claim, which does not implicate Defendants Excel, Levine or Farber. Plaintiff alleges that in "a memorandum dated December 24, 2004, from the Horizon Board of Managers to the Horizon Condominium Unit Owners falsely stated, among other things, that 'Ms. Boyum

- 10 -

failed to provide documentation to support her allegation that she was sick' and that 'Ms. Boyum's behavior and actions were flagrant acts of insubordination.'" (Complaint, ¶ 47).

Thus, to the extent that Plaintiff claims that Defendants Horizon, Excel, Levine, and Farber defamed her, but does not set forth "the particular words complained of", *see* Complaint, ¶¶ 46-47, those portions of Plaintiff's defamation claim fail to state a claim and must be dismissed. Specifically, Plaintiff's defamation claim against Defendants Excel, Levine and Farber must be dismissed because Plaintiff fails to plead any defamatory words with respect to those Defendants, *see* Complaint, ¶¶ 46-47, and those portions of Plaintiff's Complaint setting forth only general allegations of defamation with respect to Defendant Horizon must be dismissed for failure to comply with the special pleading requirements set forth in Section 3016(a) of the New York Civil Practice Law and Rules. (*See* Complaint, ¶ 47).

Furthermore, with respect to the allegations in Paragraph 47 of Plaintiff's Complaint, which set forth the particular words complained of with respect to Defendant Horizon, this portion of Plaintiff's defamation claim still fails to state a claim for defamation and must be dismissed. In *Konikoff v. Prudential Ins. Co. of Am.*, 1999 U.S. Dist. LEXIS 13501, *37-38 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 92 (2d Cir. 2000), the court recognized that "qualified privilege may apply if the publication of the defamatory statement was made to 'any one of several persons having a common interest in a particular subject matter,' provided that the publisher 'correctly and reasonably . . . believe that there is information that another sharing the common interest is entitled to know.'" *Id.* (citations omitted). The court further recognized that those sharing a conditional privilege to communicate defamatory matter concerning their own interests include, among others, partners, fellow officers of a corporation, fellow shareholders, fellow employees and persons associated together in professional activities. *Id.* at *38. In *Foster v.*

*Churchill*, 87 N.Y.2d 744, 752, 665 N.E.2d 153, 157, 642 N.Y.S.2d 583, 587 (1996), the New York Court of Appeals noted that the rationale for applying a privilege in these circumstances is so that "the flow of information between persons sharing a common interest [will] not be impeded." *Id.* (quotations and citation omitted).

Accepting Plaintiff's allegations regarding the December 24, 2004 memorandum as true, to the extent that the Horizon Board of Managers may have communicated to the Unit Owners of the Horizon regarding Plaintiff, such communications are not actionable because the Board of Managers and Unit Owners of the Horizon share a common interest in the operations of the Horizon Condominium and the communications were therefore privileged. *See, e.g., Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992) (qualified privilege applies to communications between tenant association members of an apartment complex); *Erdberg v. Freeman*, 90 Misc.2d 797, 799, 396 N.Y.S.2d 315, 316 (N.Y. Civ. Ct. 1977) ("the tenants and landlord of an apartment building constitute a group with a common interest in its security and quality as a residence.  Communication among members of such a group for the purposes of advancing that interest, made in good faith and published only to interested persons are protected from the hazards of an action for defamation by a qualified privilege."); *see also* Restatement (Second) of Torts § 596 cmt. d (1977) ("Tenants in common and other co-owners of land or chattels are included within the rule stated in this Section as being conditionally privileged to communicate among themselves matter defamatory of others which concerns their common interests . . . .").  For this reason and Plaintiff's failure to comply with the special pleading requirements of Section 3016(a) of the New York Civil Practice Law and Rules, Plaintiff's defamation claim should be dismissed.

### VI.

**PLAINTIFF'S STATE TORT LAW CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE PREEMPTED BY SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT AND PLAINTIFF HAS NOT EXHAUSTED THE GRIEVANCE AND ARBITRATION PROCEDURES IN THE COLLECTIVE BARGAINING AGREEMENT**

All of Plaintiff's state tort law claims – IIED, defamation, tortious interference with contractual relations, and tortious interference with prospective economic advantage/relations – should be dismissed because they are preempted by Section 301 of the LMRA and Plaintiff has not exhausted the grievance and arbitration procedures in the CBA.

**A.    Plaintiff's State Tort Law Claims are Preempted by Section 301 of the Labor Management Relations Act**

Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a).  In *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103, 7 L.Ed.2d 593, 599, 82 S.Ct. 571, 576 (1962), the Supreme Court held that Section 301 of the LMRA mandates that state law clams which fall within the scope of Section 301 are preempted by the statute and federal labor principles must be applied to resolve the dispute.  The Court reasoned that uniformity of law as to the interpretation of large-scale collective bargaining agreements is integral to the health and continued use of these agreements.  369 U.S. at 103-04.

In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 85 L.Ed.2d 206, 105 S.Ct. 1904 (1985), the Supreme Court created a relatively expansive standard to determine what types of claims are

preempted by the LMRA.  The Court stated that the LMRA not only preempts suits based on a contract (i.e., collective bargaining agreement) violation, but the statute also preempts those suits involving "the meaning given a contract phrase or term."  471 U.S. at 211.  The Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law."  *Id.* at 220 (citation omitted).

Analyzed under the standard announced in *Allis-Chalmers*, Plaintiff's state tort law claims are clearly preempted by the LMRA.  Indeed, courts have held that each of the tort claims in Plaintiff's Complaint are preempted by Section 301 of the LMRA where, as here, the determination of the claim requires interpretation of the collective bargaining agreement between the parties.  *See, e.g., Caci v. Laborers International Union of N. Am.*, 1999 U.S. Dist. LEXIS 21573 (W.D.N.Y. 1999), *dismissed*, 2000 U.S. Dist. LEXIS 4876 (W.D.N.Y. 2000) (defamation); *Seaver v. Yellow Freight Sys., Inc.*, 1996 U.S. Dist. LEXIS 15915 (W.D.N.Y. 1996) (IIED claim); *Dragone v. M.J. Raynes, Inc.*, 695 F.Supp. 720 (S.D.N.Y. 1988) (tortious interference with contractual rights claim).

## 1.    Intentional Infliction of Emotional Distress Claim

Those portions of Plaintiff's IIED claim that are not time-barred by the one-year statute of limitations, *see* Complaint, ¶¶ 25-42, are preempted by Section 301 of the LMRA.  Plaintiff alleges that following a series of events related to her use of sick time under the CBA, *see* Complaint, ¶ 27, she was suspended on or about October 27, 2004, *see* Complaint, ¶ 31, and ultimately terminated from employment for insubordination on December 3, 2004.  (*See* Complaint, ¶ 36).  Plaintiff further alleges that all of these allegations relate to her "wrongful discharge".  (Complaint, ¶ 25).

In *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 47 L.Ed.2d 231, 96 S.Ct. 1048 (1976), the Supreme Court recognized that suits arising under Section 301 of the LMRA include "those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and <u>wrongful discharge</u>." 424 U.S. at 562 (quoting *Smith v. Evening News Assoc.*, 371 U.S. 195, 199-200, 9 L.Ed.2d 246, 250-51, 83 S.Ct. 267, 269-70 (1962)) (emphasis added).

Here, any resolution of Plaintiff's IIED claim, which is comprised of allegations of wrongful discharge, requires analysis of the CBA. The management rights clause in the CBA expressly prohibits unjust discharge and provides, in pertinent part, that:

> If any employee . . . is unjustly discharged, he shall be reinstated without loss of seniority or rank and without salary reduction. The Joint Industry Grievance Committee or the Arbitrator may determine whether, and to what extended, the employee shall be compensated by the Employer for time lost.

(CBA, Art. IV(3)). Since resolution of Plaintiff's IIED claim is dependent upon interpretation and application of the terms of the CBA, Plaintiff's IIED claim is preempted by Section 301 of the LMRA. *See Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F.Supp. 162, 172 (E.D.N.Y. 1990) (holding plaintiffs' state law claims for negligence, tortious interference with contract, breach of contract, fraud and emotional distress preempted by Section 301 of the LMRA because the claims "all center around plaintiffs' allegedly wrongful dismissal in violation of their union employment contracts . . .").

Moreover, to the extent Plaintiff alleges that her IIED claim is based on Defendants Levine and Farber's requests for documentation to support Plaintiff's medical leave of absence from work in September and October 2004, *see* Complaint, ¶¶ 28-35, Plaintiff's claim would still be preempted by Section 301 of the LMRA. In *Seaver*, the court found that plaintiff's state law claim for IIED was preempted by Section 301 of the LMRA because the conduct complained of was the same conduct documented in warning letters, suspension letters and grievance notices

and a determination of whether this conduct was "outrageous" or "extreme" under state law standards for establishing an IIED claim depended on whether defendants' conduct was prohibited or condoned by the terms of the collective bargaining agreement.  1996 U.S. Dist. LEXIS 15915, *10-12.   Similarly, in this case, any determination as to whether Defendants Levine or Farber's conduct in seeking documentation to support Plaintiff's medical leave of absence was "outrageous" or "extreme" will depend on whether their conduct was prohibited or condoned by the management rights clause in the CBA, which provides that management has the "right to direct and control its policies subject to the obligations of [the CBA]" and that "[e]mployees will cooperate with management within the obligations of [the CBA] to facilitate building operation."  (CBA, Art. IV(1)-(2)).

For all of these reasons, Plaintiff's IIED claim is preempted by Section 301 of the LMRA.

**2.     Defamation Claim**

Plaintiff's defamation claim is also preempted by Section 301 of the LMRA.   In her Complaint, Plaintiff alleges that "Defendants Horizon, Excel, Levine, and Farber falsely accused Boyum of dishonesty, insubordination, and misconduct" with respect to Plaintiff's use of sick time. (Complaint, ¶¶ 46-47).  Since a defamation claim under New York law requires "proof (1) of a defamatory statement of fact, (2) about or concerning the plaintiff, (3) published by the defendant to a third party, (4) causing the plaintiff injury", *Caci*, 1999 U.S. Dist. LEXIS 21573, *19, relevant to whether Plaintiff's states a claim for defamation is whether Defendants Horizon, Excel, Levine, and Farber falsely stated that Plaintiff was dishonest and engaged in insubordination and misconduct.  Proof of the veracity of these alleged statements will require interpretation of the CBA, which contains the pertinent provision on use of sick days, *see* CBA,

Art. XII, and Defendants' implementation of this provision in accordance with the management rights' clause. (*See* CBA, Art. IV). As in *Stallard v. B-Line Sys., Inc.*, 799 F.Supp. 924 (S.D. Ill. 1992), the extent to which Plaintiff's defamation claim requires interpretation of the CBA mandates preemption of the claim based on Section 301 of the LMRA.

In *Stallard*, the plaintiff alleged that defendant defamed him by publishing a letter which detailed the reasons for plaintiff's termination. *Id.* at 925. Upon review of the letter, the court found that it involved issues which were inextricably intertwined with the CBA. *Id.* at 926. Specifically, the plant rules which were referred to in the letter were adopted pursuant to the CBA. *Id.* Furthermore, the court found that the alleged defamatory statements were an integral part of the dismissal process. *Id.* Accordingly, the court held that the issue of whether the plaintiff breached the company rules, or whether defendant defamed plaintiff, depended upon an analysis of the collective bargaining agreement. *Id.* On this basis, the court held that plaintiff's defamation claim was preempted by Section 301 of the LMRA.

The specifically quoted language, "Ms. Boyum failed to provide documentation to support her allegation that she was sick" and "Ms. Boyum's behavior and actions were flagrant acts of insubordination", Complaint, ¶ 47, goes to the heart of the CBA's sick leave provision. That provision entitles an employee to paid sick leave, but only for "bona fide illness." (CBA, Art. XII.1.). Thus, the question of whether documentation supported Plaintiff's claim that she was sick requires inquiry into the meaning of the term "bona fide illness" in the CBA. Similarly, whether Plaintiff's acts were insubordinate and constituted misconduct clearly requires interpretation of the CBA to determine whether she was insubordinate – flagrantly or otherwise – and engaged in misconduct. Since the issue of whether Defendants Horizon, Excel, Levine, and Farber defamed Plaintiff requires a determination of whether Plaintiff was dishonest and engaged

in insubordination and misconduct under the terms of the CBA, Plaintiff's defamation claim is preempted by Section 301 of the LMRA. *See, e.g., Capitano v. Laborers Int'l Union of N. Am.*, 2000 U.S. Dist. LEXIS 4875, *6 (W.D.N.Y. 2000) (holding plaintiff's defamation claims preempted by Section 301 of the LMRA where the claims require interpretation of the collective bargaining agreement); *Panczykowski v. Laborers Int'l Union of N. Am.*, 2000 U.S. Dist. LEXIS 4847, *7 (W.D.N.Y. 2000), *aff'd*, 2001 U.S. App. LEXIS 1282 (2d Cir. 2001) (same); *Caci*, 1999 U.S. Dist. LEXIS 21573, *31-32 (same).

3.    **Tortious Interference with Contractual Relations and Tortious Interference with Prospective Economic Advantage/Relations Claims**

Plaintiff's tortious interference with contractual relations and tortious interference with prospective economic advantage/relations claims are both preempted by Section 301 of the LMRA. With respect to her claim for tortious interference with contractual relations, Plaintiff alleges that "Defendants Farber, Levine, and Oertell knowingly and intentionally induced Horizon to breach Boyum's employment agreement without justification", resulting in damage to Plaintiff. (Complaint, ¶¶ 52-53). Since the only agreement that governed Plaintiff's employment was the CBA, *see* Complaint, ¶ 10, resolution of Plaintiff's claim for tortious interference with contractual relations hinges upon an interpretation of the CBA, thereby preempting the claim by Section 301 of the LMRA. This is because, "[u]nder traditional principles of New York law, a party may not recover for tortious inducement of breach of a contract without providing that the underlying contract has been breached." *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir. 1990). In *Cespuglio v. Ward*, 2004 U.S. Dist. LEXIS 8586 (S.D.N.Y. 2004), the court explained that:

> A tortious interference with a contract claim, by necessity, presumes a breach of contract. An adjudication of the tort claim therefore requires the court to inquire

about that breach – what duties did the contract create? Did the parties to the contract fulfill those duties? If not, was the failure on one side to fulfill its duty caused by the defendant? It is hard to imagine a situation where a claim for tortious interference with a collective bargaining agreement will not implicate the provisions of that agreement.

*Id.* at *14-15. Accordingly, Plaintiff's claim, although framed as a state law claim for tortious interference with contractual relations, is really a claim under Section 301 of the LMRA and is preempted by the LMRA.

That some courts in New York do not require that the relevant contract be breached, instead requiring "intentional interference with the performance of that contract by the third party without justification", *see Dragone*, 695 F.Supp. at 724 (quotations and citations omitted), will not alter this conclusion. As the court in *Dragone* recognized:

> [A]ny successful suit for tortious interference with a contract ultimately derives vitality from the contract itself. To determine whether a party has "intentional[ly] interfere[ed] with the performance" of the [collective bargaining agreement], [the plaintiff] will be forced to elucidate what obligations were owed to [him/her], an inquiry based on interpretation of the collective bargaining agreement. In addition, while the courts have fashioned justifications for interference with contractual duties, those "justifications" are based upon the rights created by the contract and the interests of the parties to that contract.

*Id.* (citations omitted) (emphasis added).

Plaintiff's claim for tortious interference with prospective economic advantage/relations is also preempted by Section 301 of the LMRA. With respect to this claim, Plaintiff alleges that "a business relationship existed between [her] and Horizon based on her employment" and that "Defendants Farber, Levine, and Oertell, knowing of this relationship, intentionally interfered with it." (Complaint, ¶¶ 55-56). Plaintiff further alleges that "Defendants Farber, Levine, and Oertell . . . used improper means to interfere with the relationship between Boyum and Horizon." (Complaint, ¶ 57). As is clear from these allegations, Plaintiff's claim, although framed as a claim for tortious interference with prospective economic advantage/relations, is really a

duplicate claim for tortious interference with contractual relations.   In *A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F.Supp.2d 485 (S.D.N.Y. 1998), the court explained that tortious interference with prospective contractual relations, which is also referred to as tortious interference with business relations, prospective economic advantage, or precontractual relations, "applies to those situations where a third party would have entered into a contractual relationship with the plaintiff but for the defendant's international and wrongful acts." *Id.* at 494.   Here, Plaintiff does not allege that Defendants Farber, Levine, and Oertell tortiously interfered with a contractual relationship with a prospective employer; rather, Plaintiff alleges that Defendants Farber, Levine, and Oertell tortiously interfered with her contractual relationship with the Horizon Condominium.   Since Plaintiff's claim for tortious interference with prospective economic advantage/relations is duplicative of Plaintiff's claim for tortious interference with contractual relations, the claim must be dismissed as precluded by the tortious interference with contractual relations claim, but also as preempted by Section 301 of the LMRA for the same reasons Plaintiff's tortious interference with contractual relations claim is preempted.

**B.**     **Plaintiff Has Not Exhausted the Grievance and Arbitration Procedures in the Collective Bargaining Agreement**

Consistent with the policy underlying Section 301 of the LMRA, the Supreme Court has long required plaintiffs to exhaust whatever grievance and arbitration procedures exist in the collective bargaining agreement before suing in federal court. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842, 854 (1967) ("[i]t is settled that the employee must at least attempt to exhaust exclusive grievance procedures established by the [CBA]."). As the court recognized in *Marine Transport Lines, Inc. v. International Organization of Masters,*

*Mates & Pilots*, 609 F.Supp. 282, 287 (S.D.N.Y. 1985), "to permit [a party] to avoid the grievance and arbitration procedures merely by attaching a tort label to an arbitrable contract dispute would, as the Supreme Court stated in *Allis-Chalmers Corp. v. Lueck*, 'eviscerate a central tenet of federal labor-contract law.'"

In the present case, the CBA requires that all disputes be submitted to the grievance and arbitration procedure set forth in the CBA.  (*See* CBA, Art. V-VI).  Specifically, the CBA provides as follows:

**Arbitration**
**ARTICLE VI**

1.  <u>A Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement, and such other issues as are expressly required to be arbitrated before him,</u> including such issues as may be initiated by the Trustees of the Funds.

\*  \*  \*

3.  <u>The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues,</u> and the Arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the employee(s) or Employer(s) involved.  Nothing herein shall be construed to forbid either party from resorting to court for relief from, or to enforce rights under, any award.  In any proceeding to confirm an award of the Arbitrator, service may be made by registered or certified mail, within or without the State of New York, as the case may be.

\*  \*  \*

(CBA, Art. VI (emphasis added)).

Since Plaintiff's state tort law claims are preempted by the LMRA, and Plaintiff failed to grieve or arbitrate all of her claims prior to instituting the present action, which is the "sole and exclusive method for the determination of all such issues" under the CBA, this Court should dismiss Plaintiff's state tort law claims. *See, e.g., Allis-Chalmers*, 471 U.S. at 220-21 (applying

federal labor law, Court dismissed state law bad faith claim for failure to exhaust contractually-mandated grievance procedure); *see also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 13 L.Ed.2d 580, 85 S.Ct. 614 (1965) (holding that a plaintiff may not bring an action under Section 301 of the LMRA until all grievance or arbitration remedies provided in the collective bargaining agreement have been exhausted); *King v. New York Tel. Co., Inc.*, 785 F.2d 31 (2d Cir. 1986) (same).

## VII.

### ALTERNATIVELY, IF THIS COURT DECIDES THAT PLAINTIFF'S STATE TORT LAW CLAIMS SHOULD NOT BE DISMISSED, THIS COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE THESE CLAIMS PURSUANT TO THE ARBITRATION PROVISION IN THE COLLECTIVE BARGAINING AGREEMENT

Alternatively, should this Court decide that Plaintiff's state tort law claims should not be dismissed, this Court should compel Plaintiff to arbitrate all of her claims under the arbitration provision set forth in the CBA.  The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), creates a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the FAA, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 74 L.Ed.2d 765, 785, 103 S.Ct. 927, 941 (1983), and "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1063 (2d Cir. 1993) (citation omitted).

Any arbitration agreement affecting interstate commerce is subject to the FAA.[4]  *Genesco, Inc. v.*

*T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987).

In *Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580*,

875 F.Supp. 245 (S.D.N.Y. 1995), the court explained that:

> In determining the arbitrability of a particular dispute, a court must decide
> "whether the parties agreed to arbitrate, and, if so, whether the scope of that
> agreement encompasses the asserted claims."  Further, "the Act leaves no place
> for the exercise of discretion by a district court, but instead mandates that district
> courts *shall* direct the parties to proceed to arbitration on issues as to which an
> arbitration agreement has been signed."

*Id.* at 248 (citations omitted).  Thus, "the first task of a court asked to compel arbitration of a

dispute is to determine whether the parties agreed to arbitrate that dispute . . . .  [A]s with any

other contract, the parties' intentions control, but those intentions are generously construed as to

issues of arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,

626, 87 L.Ed.2d 444, 454-55, 105 S.Ct. 3346, 3353-54 (1985).  As the *Active Glass* court further

explained:

> Once a court has determined that an arbitration clause exists, "any doubts
> concerning the scope of the arbitrable issues should be resolved in favor of
> arbitration, whether the problem at hand is the construction of the contract
> language itself or an allegation of waiver, delay, or a like defense to arbitrability."
> In fact, the existence of an arbitration clause in [an agreement] raises a
> presumption of arbitrability that can be overcome only if 'it may be said with
> positive assurance that the arbitration clause is not susceptible of an interpretation
> that covers the asserted dispute.  Doubts should be resolved in favor of
> coverage.'"

875 F.Supp. at 248-49 (citations omitted).

---

[4]  As the court in *Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580*, 875 F.Supp. 245 (S.D.N.Y. 1995), noted, "[e]ven if the FAA does not directly apply to employment contracts or collective bargaining agreements, the policy in favor of enforcing arbitration agreements is still clear."  *Id.* at 248 n.5 (citation omitted).  *See CBS, Inc. v. Snyder*, 798 F.Supp. 1019, 1024 n.4 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d Cir. 1993) ("the federal law developed under Section 301 [of the LMRA] to govern the construction of arbitration clauses in collective bargaining agreements and the role of the federal courts in enforcing agreements to arbitration is consistent with the standards developed under the Federal Arbitration Act.").

As discussed in Part VI of the Argument within, the CBA that governed Plaintiff's employment contains a provision providing for arbitration. (CBA, Art. VI). The arbitration provision in the CBA is a very broad one, requiring arbitration of "all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement, and such other issues as are expressly required to be arbitrated before [the arbitrator] . . . ." (CBA, Art. VI). Indeed, the arbitration provision at issue here is even broader than the arbitration provision before the Supreme Court in *AT&T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 650, 89 L.Ed.2d 648, 657, 106 S.Ct. 1415, 1419 (1986), where the Court held that the presumption of arbitrability was "particularly applicable" given the breadth of the provision.

In that case, the collective bargaining agreement required arbitration of "any differences arising with respect to interpretation of this contract or the performance or any obligation hereunder . . . ." 475 U.S. at 650. Given the presumption of arbitrability here and the fact that there is no express provision in the CBA excluding Plaintiff's particular claims from arbitration, this Court should compel Plaintiff to arbitrate all of her state tort law claims in the event that this Court does not dismiss them. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, 41 L.Ed.2d 270, 276, 94 S.Ct. 2449, 2453 (1974) (noting that Section 4 of the FAA directs a federal court to order parties to proceed to arbitration if there has been a "'failure, neglect, or refusal' of any part to honor an agreement to arbitrate"); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85, 4 L.Ed.2d 1409, 1419, 80 S.Ct. 1347, 1354 (1960) ("[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . .").

- 24 -

## CONCLUSION

For the reasons set forth herein, Defendants respectfully requests that this Court (i) dismiss Plaintiff's Complaint in its entirety or, in the alternative, compel Plaintiff to arbitrate her state tort law claims, and (ii) award Defendants such other and further relief that this Court deems just and proper.

Dated: New York, New York
       May 31, 2005

Respectfully submitted,

CLIFTON BUDD & DeMARIA, LLP
*Attorneys for Defendants*

By: _____

Robert A. Sparer (RS-1355)
Kristine A. Sova (KS-5198)
420 Lexington Avenue, Suite 420
New York, New York 10170-0089
(212) 687-7410

## AFFIDAVIT OF SERVICE BY FIRST CLASS MAIL

STATE OF NEW YORK    )
                            )    ss:
COUNTY OF NEW YORK  )

        Kristine A. Sova deposes and says:

        I am not a party to the action; I am over 18 years of age; and I reside in New York, New York.

        On May 31, 2005, I served the within **Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint in Its Entirety or, Alternatively, to Compel Arbitration, Civil Action No. 05 Civ. 4801 (TPG)(FM)** upon:

                Dina R. Jansenson, Esq.
                Flemming, Zulack & Williamson, LLP
                One Liberty Plaza
                New York, New York 10006

at the address designated by said attorney for that purpose by depositing a true copy of same enclosed in a postage-paid, properly addressed wrapper in a depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                    _____
                                     KRISTINE A. SOVA

Sworn to before me this
1st day of June, 2005

_____
Notary Public

        ROBERT J. TRACY
    **Notary** Public, State of New York
       No. 02TR6085142
    **Qualified** in Westchester **County**
**Commission** Expires December 23, **2006**