UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------x
Araella Boyum,                       :
                                     :
                  Plaintiffs,        :
                                     :      05 Civ. 4801 (TPG)
         - against -                 :
                                     :      **OPINION**
Horizon Condominium, et al.,         :
                                     :
                  Defendants.        :
                                     :
-------------------------------------x
```

Plaintiff Araella Boyum brought this action in Supreme Court, New York County, against Horizon Condominium, Excel Management Services, Inc. (the company that provides building management services for the condominium) and three individuals who were directly involved with the allegedly tortious conduct.  Plaintiff alleges four causes of action, each of which appears on its face to sound in state law.  They are: first, intentional infliction of emotional distress; second, defamation; third, tortious interference with contractual relations; and fourth tortious interference with prospective economic advantage.

Defendants timely removed the case to federal court, asserting federal question jurisdiction due to the preemptive effect of section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, *et seq.*

1

Defendants have not answered, but have moved to dismiss or to compel arbitration.

Plaintiffs have moved to remand.  This motion is denied.  Defendants' motion to dismiss is granted.

<u>Plaintiff's Factual Allegations</u>

For purposes of deciding this motion, the court will accept the allegations of the complaint as true.  The following section is a summary of plaintiff's factual contentions which are drawn from the Verified Complaint originally filed in state court.

1.  <u>Plaintiff's Employment at Horizon.</u>

Plaintiff worked as a concierge in the Horizon Condominium from 1988 through December 3, 2004, and was a member of the Service Employees International Union, Local 32BJ, AFL-CIO ("Union").  Plaintiff's employment there was pursuant to a series of three-year Collective Bargaining Agreements ("CBAs") each of which is entitled Apartment Building Agreement.  The CBAs were entered into between the Union and the Realty Advisory Board on Labor Relations, Inc.

The first ten years of plaintiff's employment (1988-1998) were uneventful.  Beginning in 1992 plaintiff's supervisor was defendant Nathan Farber.  In December 1995, plaintiff's husband, Zvi Boyum, was offered and accepted employment as a concierge at the Horizon Condominium.  Plaintiff

alleges that Zvi accepted employment on the condition that he and his wife be permitted to take vacations together and alleges that at least some of the defendants agreed to this condition.  Plaintiff and her husband took vacations together in 1996, 1997, 1998, and 1999 without objection by any defendant.

2. <u>Purchase of the Unit.</u>

In the middle of 1999, plaintiff and her husband decided to purchase a unit in the Horizon Condominium as an investment property.  In June 1999, defendant Howard Oertell, a member of the Horizon Board of Managers, informed plaintiff and her husband that the board had unanimously decided to deny permission to purchase the unit because, as unit owners, plaintiff and her husband would become "the bosses" of the superintendent which would create an impermissible conflict of interest that was prohibited by either the Horizon bylaws or "the law" (Compl. ¶ 16).  Oertell did not, however, provide plaintiff or her husband with a copy of any such bylaw or law but he warned them repeatedly that it would be very bad for them if they bought the unit (<u>Id.</u>).

Plaintiff alleges that, according to the Horizon bylaws, the Board of Managers had the option to purchase any unit for sale in the building on the same terms and conditions as contained in any bona fide offer to purchase a unit in the building (¶ 20).  Plaintiff and her husband apparently made an offer for the apartment, and the Horizon Board must have elected not to exercise its alleged right under the bylaws.  Plaintiff and her husband purchased the unit on August 2, 1999.  The complaint does not explain why the Board permitted

this transaction to go through when, according to plaintiff's complaint, the Board had decided that they should not do so (¶ 16).

   3.   <u>Defendants' Conduct Following the Purchase of the Unit.</u>

From the time plaintiff and her husband announced their intention to purchase the unit, defendants commenced a "campaign of harassment and intimidation" against them (¶ 23).  Plaintiff alleges that defendants engaged in six types of conduct in this regard.

   a.   <u>Setting Aside an Arbitration Award Arising From the Denial of a Request for Vacation Time.</u>

Plaintiff alleges that in 1999, defendants denied plaintiff's request to take a vacation with her husband by citing a "purported rule" prohibiting two employees in the same category from vacationing at the same time.  It is unclear whether the denied request, made in 1999, was for a subsequent vacation in 1999 or for a vacation in year 2000.  However, since plaintiff alleges she and Zvi had already vacationed together in 1999, the court presumes that this request was in anticipation of a year 2000 vacation.  Defendants issued this denial despite the fact that they previously permitted plaintiff and her husband to vacation together, and that Zvi Boyum accepted employment on the condition that he be permitted to vacation with plaintiff (¶ 23(A)).

Plaintiff then took this issue to arbitration and prevailed.  Arbitrator Nicholas J. Cooney issued an Opinion and Award in June 2001 making the following findings:

> Zvi Boyum was assured that he and his wife would be permitted to take vacations together.
>
> Horizon received notice in June 1999 of the Boyums' intention to purchase a unit at the premises and such news was apparently not well received by Horizon.
>
> Management subsequently issued a memorandum, dated June 31, 1999 stating that, with respect to such vacations by the staff, no more than one person in each work category would be able to take similar time off.
>
> The enforcement of such rule seems to have been applicable solely to the Boyums.

(Id.)  On the basis of these findings, the arbitrator directed defendants to permit plaintiff and her husband to take vacations together (Id.).

According to the complaint, defendants then "vindictively" amended the CBA "to specifically set aside the Arbitrator's Opinion and Award so that Plaintiff and her husband would not be able to take any vacations at the same time" (¶ 23(B)).

### b.  Alteration of Work Hours.

 Plaintiff alleges that in September 2001, defendant Farber altered Zvi Boyum's work schedule in order to cause an adverse impact on plaintiff and Zvi's family life.  Specifically, this alteration caused plaintiff and Zvi to work opposite shifts (¶ 23(C)).  Defendants also stopped their practice of permitting plaintiff's husband to take Fridays off despite knowledge that the extended Boyum family regularly gathered on Fridays (Id.).

c.  <u>Creation of a Hostile Work Environment.</u>

Plaintiff alleges that defendants created a hostile work environment by pressuring other employees not to associate with her.  Plaintiff further alleges that this made her uncomfortable and frustrated her ability to perform her work duties (¶ 23(D)).

d.  <u>Disparate Treatment.</u>

Plaintiff alleges that defendants treated her differently from the other Horizon employees.  The sole example plaintiff cites, however, is that defendant Farber permitted another co-worker to "chronically violate his lunch period" while giving plaintiff a "severe tongue lashing" for the one time she returned from lunch one minute late (¶ 23 (E)).

e.  <u>Baseless Reprimands.</u>

Aside from the reprimand described above, plaintiff alleges that defendants reprimanded her without basis on multiple occasions and for differing reasons.  Specifically, defendants reprimanded her for "interacting with Horizon residents," for being "uncooperative with a Horizon resident," and for "leaving her belongings lying around the building" (¶ 23 (F-H)).

f.  <u>Discharge Subsequent to Sick Leave.</u>

Plaintiff alleges that defendants' conduct finally culminated in her wrongful discharge.  Plaintiff's discharge arose following a dispute with defendants regarding an illness that forced her to take time off from work.  In September 2004, plaintiff's doctor diagnosed her with "severe anxiety and

depression" and advised her to take time off from work.  Plaintiff alleges she had the sick time available and, after giving notice to defendants, took five days off pursuant to her doctor's advice.  When she returned from sick leave, plaintiff provided a note from her doctor which had advised her to take this time off.  Defendants were not satisfied with this note and requested that she furnish a more detailed note.  Plaintiff complied and provided, along with the more detailed note, a receipt of payment for her doctor's services in this illness.  Her doctor's second note stated, in pertinent part, that due to her underlying medical condition "I felt that it was imperative that patient take 10 days off from work for her medical condition to improve."  Despite plaintiff's cooperation, defendants placed her on suspension on or about October 27, 2004 (¶¶ 25-31).

During plaintiff's suspension, defendants required her to provide numerous forms of documentation to support her claim of illness.  Specifically, defendants required her to provide: 1) a full medical records release, which would permit plaintiff's doctor to release the entire medical file to defendants for inspection; 2) her U.S. and Israeli passports for inspection, presumably to verify that plaintiff had remained in the United States while she was absent from work and; 3) a signed United States Customs Declaration form to authorize the release of records of her international travel.  Plaintiff complied with all these requirements (¶¶ 25-35).

Despite complying with all of defendants' requests, plaintiff was terminated from employment on December 3, 2004 with defendant Farber citing insubordination as the cause (¶ 36).

g.  Alleged Conduct Relating to Zvi Boyum.

Plaintiff also alleges a similar campaign of harassment and intimidation against Zvi Boyum and recites incidents in support of that assertion.  Since Zvi Boyum is not a party to this action, these allegations are disregarded by the court except as they relate to plaintiff.

4.  Defendants' Conduct at the Time of the Discharge.

Plaintiff alleges that, in connection with her discharge, defendants issued a defamatory publication in the form of a December 24, 2004 memorandum which was distributed to Horizon Condominium owners and tenants, Horizon employees, and union representatives.  The memorandum contained two allegedly defamatory statements: "Ms. Boyum failed to provide documentation to support her allegation that she was sick" and, "Ms. Boyum's behavior and actions were flagrant acts of insubordination" (¶ 47).

5.  Summary of Plaintiff's Causes of Action and Defendants' References to Specific Provisions of the CBA.

a.  The Causes of Action.

Plaintiff's first cause of action is for intentional infliction of emotional distress.  She claims that the conduct described in section 3 above, in the aggregate, constituted this tort.  Thus, plaintiff asserts that defendants intentionally inflicted emotional distress by refusing to permit plaintiff and her

husband to vacation together; altering her work schedule; directing other employees not to associate with her; managing her more strictly than other employees; reprimanding her without basis and; discharging her after she took sick leave to which she was entitled (¶¶ 43-44).  The first cause of action is against all defendants.

Plaintiff's second cause of action is also against all defendants and is for defamation.  She relies on the statements contained in the December 24, 2004 memorandum described in section 4 above.  Plaintiff contends both that the information contained in the publication was false and that defendants published it with actual malice (¶¶ 45-50).

Plaintiff asserts her third and fourth causes of action solely against the individual defendants, Farber, Levine and Oertell.  Her third cause of action is for tortious interference with contractual relations.  Plaintiff claims that the individual defendants induced Horizon to breach its employment agreement with her (¶ 52).  Her fourth cause of action is for tortious interference with prospective economic advantage.  Plaintiff claims that the individual defendants interfered with the business relationship she had with Horizon in order to harm her (¶¶ 54-59).

b.  Defendants' References to the CBA.

In support of their removal of this action to federal court, defendants refer to certain provisions of the CBA in support of their argument that interpretation of those provisions is required in order to resolve this dispute.

9

In deciding a question of subject matter jurisdiction the court may refer to evidence outside the pleadings.  Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002).  Plaintiff alleges that her employment was pursuant to an Apartment Building Agreement (¶ 10), which is the CBA.  The court will rely on the pertinent provisions of the CBA.

> Article III(3), which permits reasonable changes in scheduling or duties provided at least one week's advance written notice is given.  For shift changes, the required notice is three weeks;
>
> Article IV (the "Management Rights clause") which provides that management has the right to direct and control its policies and that employees will cooperate with management in order to facilitate efficient building operation;
>
> Article XII(1) (the "Sickness Benefits clause"), which provides that regular employees shall receive ten days of paid sick leave for "bona fide illness."
>
> Article XVII(10) which governs the availability of employee vacation time. That clause provides that choice of vacation periods shall be set according to "building seniority" and that they shall be "compatible with the proper operation of the building;" and
>
> Article XVII(39), which provides that, except as [the parties] may otherwise agree, there shall be no demand by either party for the negotiation or renegotiation of any matter covered or not covered by the provisions hereof.
> (Emphasis added.)

DISCUSSION

Removal and Preemption.

A cause of action originally filed in state court may be removed by the defendant when "the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).   District courts have original jurisdiction

10

over all civil actions arising under the laws of the United States.  28 U.S.C.

1331.

When a party seeking remand challenges the jurisdictional predicate for

removal, the burden falls upon the removing party to establish its right to a

federal forum by "competent proof."  R. G. Barry Corp. v. Mushroom Makers,

Inc., 612 F.2d 651, 655 (2d Cir. 1979).  If the district court lacks subject

matter jurisdiction, it remands the case under 28 U.S.C. § 1447(c).

Absent diversity jurisdiction, the general rule is that a complaint must

affirmatively allege a federal claim before it becomes removable.  Beneficial

National Bank v. Anderson, 539 U.S. 1, 6 (2003).  Where removal is predicated

upon federal question jurisdiction, the well-pleaded complaint rule governs.

Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  In such cases, federal

jurisdiction exists only when a federal question is presented on the face of the

plaintiff's properly pleaded complaint.  The rule makes the plaintiff the master

of the claim; he or she may avoid federal jurisdiction by exclusive reliance on

state law.  Id.  Therefore, to determine whether a claim arises under federal

law, a court must examine the "well pleaded" allegations of the complaint and

ignore potential defenses.  Beneficial National Bank, 539 U.S. at 6.

However, the complete preemption doctrine is a narrow exception to the

well-pleaded complaint rule.  Caterpillar, 482 U.S. at 393.  Under the complete-

preemption doctrine, certain federal statutes are construed to have such

extraordinary preemptive force that state-law claims coming within the scope of

11

the federal statute are transformed, for jurisdictional purposes, into federal claims.  Sullivan v. American Airlines, Inc., 424 F.3d 267, 272 (2d Cir. 2005). Therefore, in cases where plaintiff pleads only state law claims but, in essence, those claims are within one of these federal statutes, a court is obligated to construe the complaint as raising a federal claim and therefore arising under federal law.  Ljutovic v. 530 E. 86th St., Inc., No. 05 cv. 9846, 2006 U.S. Dist. LEXIS 62040, at *3-4 (S.D.N.Y. August 31, 2006).

One of the statutes giving rise to complete preemption is the LMRA. Beneficial National Bank, 539 U.S. at 8.  Section 301 of the LMRA confers federal jurisdiction over suits for violation of collective bargaining agreements. 29 U.S.C. § 185(a).  The preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.  Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23 (1983).  Therefore, actions for breach of contract, if the contract is a CBA, are deemed to arise under federal law.  If one of those actions is pleaded to sound only in state law, it could be properly removed to federal court.

The Supreme Court has also held that the federal interest in uniform interpretation of collective bargaining agreements may preempt certain state law tort actions.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-11 (1985). In that case, section 301 preempted an employee's state law tort claim for

breach of a duty to act in good faith in paying disability benefits.  Id., 471 U.S. at 216-20. The Court found that interpretation of the CBA was necessary to resolve the dispute because the duty on which the plaintiff based her tort claim was intrinsically related to the contract.  Id., at 216.  Thus, the claim was "inextricably intertwined" with the CBA.  Id.

In so finding, the Court established a relatively expansive standard for preemption by holding that when resolution of a state-law cause of action is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.  Id., at 220.

After Allis-Chalmers was decided, the Second Circuit stated that a complaint is preempted when it is formulated on state tort law, but the rights and obligations under the pertinent CBA are "inextricably involved" in the underlying claim.  Dougherty v. Am. Tel. & Tel. Co., 902 F.2d 201, 203 (2d Cir. 1990).

Also subsequent to the Allis-Chalmers decision, the Supreme Court has stated that only those state-law tort actions that necessarily rest on an interpretation of the terms of a CBA is pre-empted by section 301. International Brotherhood of Elec. Workers v. Hechler, 481 U.S. 851, 859 (1987) (discussing Allis-Chalmers).  Therefore, the preemptive effect of section

13

301 does not reach those cases where a claim requires only that the CBA be consulted rather than interpreted.  Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) (The "bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

The line between "consult" and "interpret" is not a bright one.  Indeed, the Second Circuit has noted that the boundary between claims requiring interpretation of a CBA and ones that merely require such an agreement to be consulted is "elusive."  Wynn v. AC Rochester, 273 F.3d 153, 158 (2d Cir. 2001).

Nonetheless, whether a state cause of action may proceed in state court depends on the legal character of a claim, as independent of rights under the collective bargaining agreement.  Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997).

a.  Plaintiff's Causes of Action are Preempted.

In the present case, it is defendants who have raised the CBA in removing this action and in opposition to plaintiff's motion to remand.  The thrust of that opposition is that since the allegedly tortious conduct directly relates to the plaintiff's employment and the manner in which defendants treated her in that context, certain provisions in the CBA are inextricably

intertwined with the determination of whether their conduct was tortious under New York law.

It would appear correct, as a legal proposition, that if a defendant raises issues under a CBA such that a plaintiff's claim cannot be decided without interpreting and applying provisions of the CBA, then there is preemption under section 301.  The question as to whether that occurs in the present case will now be addressed.

      i.  <u>Intentional Infliction of Emotional Distress.</u>

Under New York law, a party claiming intentional infliction of emotional distress must prove four elements: 1) conduct that goes beyond all possible bounds of decency; 2) intention to cause distress, or knowledge that the defendant's conduct would result in such emotional distress; 3) severe emotional distress suffered by the plaintiff; and 4) a causal link between the defendant's conduct and the plaintiff's distress.  <u>Gay v. Carlson</u>, 60 F.3d 83, 89 (2d Cir. 1995).  To satisfy the first element, the conduct must be "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Murphy v. Am. Home Prods. Corp.</u>, 58 N.Y.2d 293, 303 (N.Y. 1983).

It is clearly possible to imagine an intentional infliction of emotional distress case in which the terms of a CBA would have nothing whatever to do

with the analysis of the defendant's conduct.  Indeed plaintiff cites such cases.
Shannon v. MTA Metro-North R.R., 952 F. Supp. 177, 181 (S.D.N.Y. 1997)
(involving repeated threats of physical harm against plaintiff); Ismail v. Barad,
No. 91 Civ. 4305, 1992 U.S. Dist. LEXIS 10927, at *2 (S.D.N.Y. July 24, 1992)
(screaming at, pushing, making pejorative comments concerning plaintiff's
background and accent, as well as false arrest and imprisonment).

In this case, it is questionable whether plaintiff makes the sort of
extreme allegations that are required to plead intentional infliction of emotional
distress.  But the issue being dealt with at this point is not whether the cause
of action be dismissed, but rather whether it is preempted by section 301.  On
the preemption issue, the court must recognize the issues that are actually
presented, not what might be presented under the legal definition of the tort.

As discussed above in section 3.a and 3.b, plaintiff alleges that
defendants denied her request to take vacation time and, when she prevailed at
arbitration, defendants set aside the award by obtaining an amendment of the
CBA.  Plainitff further alleges that defendants altered the work schedules of
plaintiff and her husband in order to harm her family life, and stopped allowing
plaintiff and her husband to take Fridays off.

In response, defendants cite both Article IV, the Management Rights
clause, and Article XVII(10), which sets forth a process for determining
vacation periods.  The Management Rights clause gives management the right

to set and implement policies and charges employees with the duty to cooperate with management.  Regarding the allegation that defendants subsequently amended the CBA to set aside the arbitration award in her favor, defendants cite Article XVII(39) which permits the parties to the CBA to negotiate or renegotiate terms if they agree to do so.

As to the change in work schedules and the denial of Fridays off, defendants cite Article III(3) which permits reasonable changes in work schedules.

It would appear clear that plaintiff's case cannot go forward on the vacation issue and the work schedule issue without application of the CBA provisions regarding work schedules and management rights.  As to plaintiff's claim of a vindictive amendment to the CBA to erase the arbitration award, it is difficult to credit plaintiff's allegation that defendants would be able to amend a CBA agreement to set aside the arbitration award in question.  However, this is not the juncture to address the facts relating to this claim and, on the present motion, neither side attempts to do so.  At this point, it must be assumed that the CBA provision about amending CBAs would come into play in reaching any factual development of this issue.

As discussed in sections 3.c, 3.d, and 3.e above, plaintiff alleges that defendants created a hostile work environment by pressuring other employees not to associate with her, that defendants treated her differently from other

employees by holding her to a stricter tardiness standard surrounding her lunch hour, and that defendants delivered baseless reprimands.

It is difficult to see how the hostile work environment claim would raise any issue under the CBA.  However, the issues about discipline and reprimands surely fall squarely under the Management Rights clause, as to the management's right to administer discipline and reprimands and the limits on such rights.

As described in section 3.f, plaintiff claims that defendants requested copious documentation of her illness and then suspended and finally terminated her without basis.  These claims call into play Article XII(1), the Sickness Benefits clause, as well as the Management Rights clause, specifically Article IV(3), which creates a grievance or arbitration remedy for unjust discharge.

What has been said shows that, with one slight exception, all of the allegations underlying plaintiff's claim of intentional infliction of emotional distress are about employment issues that cannot be developed without interpretation and application of the CBA.  Plaintiff cannot be permitted to assert these claims and have defendants denied the ability to relevant CBA provisions.  Whether the issues of interpretation are relatively simple and clear-

cut or are more difficult is beside the point.  The CBA provisions are germane to plaintiff's claims

The court concludes that plaintiff's first cause of action for intentional infliction of emotional distress is preempted by section 301.

    ii.  <u>Defamation.</u>

As discussed above, plaintiff alleges that defendants made two defamatory statements in a December 24, 2004 memorandum published by defendants (Compl. ¶ 47).  The first statement is, "Ms. Boyum failed to provide documentation to support her allegation that she was sick."  The second statement is, "Mrs. Boyum's behavior and actions were flagrant acts of insubordination."

Defendants do not dispute that plaintiff provided documentation pursuant to their requests.  Rather, they raise the issue of whether the documentation plaintiff provided supported her claim that she was sick. Therefore, defendants argue, the truth or falsity of the first statement turns on the meaning of the term "bona fide illness" in the Sickness Benefits clause (<u>Id.</u> 16).  However, defendants fail to explain how this term requires <u>interpretation</u> by the court.  There may be a question about whether the documentation plaintiff provided supported her claim, but this presents a purely factual issue, not involving the interpretation of the CBA.

As to the second statement, the court agrees with defendants' argument that the question of whether plaintiff was insubordinate requires application and interpretation of the Management Rights clause.  The pertinent part of that clause requires employees to cooperate with management in order to facilitate efficient building operation.  Thus, plaintiff's claim raises the issue of whether plaintiff cooperated by submitting to management's authority or whether she was insubordinate by rejecting management's authority.  Whether or not she complied with defendants' requests is indeed a factual question, but what the CBA requires as to the nature or extent of cooperation is a matter of contract interpretation.  Plaintiff's cause of action for defamation raises an issue which is preempted by section 301.

        iii.  <u>Tortious Interference</u>

Plaintiff's third and fourth causes of action are each for tortious interference.  She brings them both solely against the individual defendants.  The third is for tortious interference with contractual relations, and the fourth is for tortious interference with prospective economic advantage or relations.  The third cause of action alleges that the individual defendants "knowingly and intentionally induced Horizon to breach Boyum's employment contract without justification."  No specifics of the wrongdoing committed by these defendants are alleged, and no specific breach of the employment agreement is alleged, except that all the wrongdoing pleaded earlier in the complaint is incorporated

by reference.  As to what constituted the "employment agreement," plaintiff had alleged earlier in this complaint (¶ 12) that she was employed "pursuant to an Apartment Building Agreement (the "Agreement") entered into between the union and the Realty Advisory Board On Labor Relations, Incorporated."  This of course refers to the CBA.  Thus the third cause of action must be interpreted as meaning that the individual defendants induced a breach of the CBA.  It is hard to imagine a claim more clearly preempted by section 301.

The fourth cause of action alleges that the individual defendants, acting for the purpose of harming plaintiff, used improper means "to interfere with the relationship between Boyum and Horizon."  Plaintiff goes on to allege that such injury is "evidenced by the termination of her employment."  The court has already held that the claim about plaintiff's unjustified termination (as part of the cause of action for intentional infliction of emotional distress) is preempted by section 301.  The same must be said for the fourth cause of action.

iv.  Conclusion Regarding Remand and Preemption

The court has held that almost all of the claims asserted by plaintiff are preempted by section 301 and must be treated as giving rise to federal question jurisdiction.  The fact that there are two relatively minor exceptions to this does not mean that the case as a whole is not subject to federal jurisdiction.  Thus the motion to remand is denied.

<u>Motions to Dismiss or to Compel Arbitration</u>

Defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted.  In the alternative they move either to compel arbitration or to dismiss the complaint because the issues are subject to arbitration.

The court will not reach the issue of whether the complaint states a valid claim, because the court concludes that plaintiff's proper remedy was and is arbitration.

The complaint contains the express allegation that plaintiff was employed pursuant to the CBA.  Article VI(1) of the CBA provides that an arbitrator "shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application, or performance of any part of this agreement. . . ."  Article VI(3) provides that the arbitration procedure contained in the CBA shall be the "sole and exclusive method" for the determination of matters over which an arbitrator has jurisdiction.

The court has already described how plaintiff's claims regarding vacations, work schedules, discipline, sick leave and termination are matters dealt with in the CBA.  To be sure, the subjects are covered in general terms, but these are subjects which cannot be dealt with outside of the CBA.  Moreover, all of these claims of plaintiff are natural and appropriate for arbitration under the CBA.  Arbitration was and is plaintiff's proper remedy.

The present action must be dismissed.  At this point, whether plaintiff seeks arbitration is up to her.

This is not an occasion for a court order compelling arbitration.  It is not a situation, for instance, where one party has initiated a proper arbitration proceeding and the other party refuses to participate, making it appropriate for a court to issue an order compelling arbitration.

### Conclusion

For the foregoing reasons, plaintiffs' motion to remand the case to the state court is denied.  Defendants' motion to dismiss the case is granted on the ground that arbitration is the proper remedy.

SO ORDERED.

Dated:     New York, New York
           February 21, 2007

                              _____
                              THOMAS P. GRIESA
                              U.S.D.J

23